UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAY C. PATCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CV-0187-CVE-SAJ |
| ) | |
| PACIFIC LIFE & ANNUITY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff filed a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), challenging Pacific Life & Annuity Company's ("Pacific Life") denial of coverage for plaintiff's back surgery in 2001. Pacific Life responds that its decision to deny medical benefits should be upheld, because its actions were not arbitrary and capricious.

**I.**

Ray C. Patch was an employee of Agri-Nutrients, Inc., and had employer-provided health care coverage through Pacific Life. Pacific Life insured plaintiff from August 1, 2000 to November 30, 2001. On July 16, 2001, Patch was diagnosed with C-7 radiculopathy and disc herniation, and his treating physician, James Campbell, D.O., recommended physical therapy and possibly back surgery to treat plaintiff's condition. On August 7, 2001, Pacific Life denied coverage for plaintiff's back problems, because it determined that plaintiff suffered from a pre-existing condition that was excluded from coverage under Pacific Life's Group Health Insurance Plan ("the Plan"). Pacific Life believed Dr. Campbell treated Patch for back and shoulder problems before August 1, 2000, and that Patch's claim for benefits was related to pre-existing back and shoulder injuries. Patch claims that

he was forced to cancel back surgery because Pacific Life was unwilling to approve payment for the surgery. Patch appealed Pacific Life's decision, but his appeal was denied on June 19, 2003.

Following denial of his appeal, Patch retained an attorney and filed a second appeal with Pacific Life. While Patch's appeals were pending, he continued to receive physical therapy for his back condition. On May 17, 2004, Pacific Life reversed its decision to deny benefits. After further review, Pacific Life concluded that Patch's back problems were unrelated to any prior treatment he received from Dr. Campbell, and Patch's claim for benefits should not have been denied based on the existence of a pre-existing condition. Pacific Life agreed to pay for all medical expenses related to his back injury for any medical bills incurred between August 8, 2000 and November 30, 2001. Even though Patch's coverage expired on November 30, 2001, he sought payment for physical therapy expenses through May 2004 and pre-approval for back surgery. However, Patch did not have back surgery while he was still covered under the Plan. Pacific Life refused to pay for physical therapy after November 30, 2001 or pre-approve Patch's back surgery, because he did not incur these expenses while he was insured.

The Plan purchased by Patch's employer was a Preferred Provider Organization ("PPO") plan, and Pacific Life was the Plan administrator and the insurer. Therefore, Pacific Life determined eligibility for coverage and paid benefits to eligible plan participants. The Plan defines a pre-existing condition as "condition, whether physical or mental, regardless of the cause of the condition, for which medical advice, diagnosis, care, or treatment was recommended or received during the six months immediately preceding the covered person's enrollment date." Id. at 319. According to Plan documents, a Plan participant must request pre-approval for any non-emergency inpatient services.

The Plan does not create a vested right to benefits after coverage expires:

> PL&A will not pay a benefit for charges incurred for services or supplies furnished to a person following termination of that person's insurance under the group policy. Benefits of the group policy are payable only for services or supplies furnished to a person while the group policy is in force for that person and will not be paid in excess of any maximums stated in the policy during the entire period of the person's coverage under the group policy, whether the coverage period is interrupted or not. . . . There is no vested right to receive the benefits of the group policy.

Admin Rec. at 251.

Pacific Life claims that it does not have to pay for any medical expenses outside of the period of coverage. The Plan does not create a vested right for reimbursement if the medical bills were not incurred while the Plan participant was insured. Plaintiff argues that Pacific Life's failure to pay for his back surgery is arbitrary and capricious, because the need for this surgery arose while plaintiff was insured. He claims that Pacific Life's interpretation of the Plan and its decision to deny benefits after November 30, 2001 is not supported by substantial evidence.

## II.

As a preliminary matter the Court must establish the proper standard of review for plaintiff's ERISA claim. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the claims administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be

3

reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004). If plaintiff shows that the plan administrator was operating under a conflict of interest, deference to the administrator's decision is reduced and the burden shifts to the plan administrator to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.

In a conflict of interest situation, the determinative inquiry is whether the administrator's decision was supported by substantial evidence. " 'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.' " Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted). "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." Allison v. Unum Life Ins. Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a

whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of N. America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a benefit decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

In this case, it appears that the Plan grants Pacific Life total discretion to determine eligibility for benefits. The parties do not dispute this and both parties agree that the Court should review plaintiff's ERISA claim under the arbitrary and capricious standard discussed in Fought. Based on the record, it is clear that Pacific Life was operating under an inherent conflict of interest, given Pacific Life's dual role as fiduciary and insurer under the Plan. Therefore, the Court will apply an "arbitrary and capricious" standard of review, but defendant must demonstrate the reasonableness of its decision to deny coverage by showing that the conflict of interest did not influence its decision and that the coverage determination was supported by substantial evidence.

**III.**

Plaintiff's ERISA claim is somewhat unusual, because it arose after the insurer reversed its decision to deny benefits. After reviewing plaintiff's medical records, Pacific Life decided that it was obligated to pay for medical expenses caused by his back condition and incurred while he was covered under the Plan. The administrative record shows that Pacific Life paid plaintiff's medical bills until November 30, 2001.[1] The only issue before Pacific Life when it denied coverage in 2001 was whether plaintiff's back condition was covered under its insurance policy, and due to Pacific Life's reversal of its initial decision to deny benefits, there is no longer a pending case or controversy on this issue. Harrison v. United Mine Workers of America 1974, 941 F.2d 1190, 1193 (11th Cir. 1991) (finding no case or controversy when insurer approved ERISA plaintiffs' applications and paid benefits in full); Oil, Chemical & Atomic Workers Int'l Union, AFL-CIO v. The Gillette Co., 905 F.2d 1176, 1177 (8th Cir. 1990) ("If [plaintiff] applies for and is awarded benefits under the Plan, the issue of his entitlement to benefits will be moot."); Davis v. E.I. Du Pont De Nemours & Co., 176 F.R.D. 224 (W.D. Va. 1997) ("Should the plan administrator reverse the previous decision, as was the case here, the ERISA claim becomes moot."); Boyadjian v. CIGNA Co., 973 F. Supp. 500, 502-03 (D.N.J. 1997) (plan administrator's decision that plaintiff was eligible for benefits renders ERISA claim moot). Because Pacific Life reversed its decision on the issue of a pre-existing condition, that issue is moot and the Court will not review Pacific Life's initial decision to deny benefits.

---

[1] Plaintiff's attorney, Michael R. Green, demanded only that Pacific Life pay plaintiff's medical bills from August 1, 2000 until November 30, 2001. See Admin Rec. at 220. Pacific Life fully complied with this request and paid for any services provided during that time period.

6

Based on Pacific Life's decision to award benefits, there is still a pending issue as to what benefits Pacific Life was responsible for paying under the Plan. Pacific Life paid plaintiff's medical bills for any services actually provided until November 30, 2001, but Pacific Life has not reimbursed plaintiff for his proposed back surgery. Plaintiff claims that he cancelled back surgery once Pacific Life concluded that plaintiff's back condition was pre-existing. The administrative record shows that plaintiff scheduled anterior cervical discectomy and vertebrae fusion surgery for October 18, 2001, but he cancelled the surgery.[2] In fact, it appears that Pacific Life approved a one-day hospital stay from October 18 to 19 so that plaintiff could have back surgery, but Pacific Life did not receive a bill for the surgery. Admin. Rec. at 21, 28, 29. Upon further inquiry, the hospital informed Pacific Life that plaintiff did not appear for surgery due to a voluntary cancellation or rescheduling. Pacific Life admits that if plaintiff had gone forward with the surgery in October 2001, it would have been required to reimburse plaintiff. However, after plaintiff's coverage expired, Pacific Life did not have a duty to pre-approve plaintiff for a medical procedure because he was no longer insured by Pacific Life.

The plain language of the Plan shows that plaintiff has no entitlement to benefits after the insurance policy expired. On July 28, 2004, plaintiff demanded that Pacific Life pre-approve back surgery and pay his physical therapy bills up to July 2004, even though he no longer had health insurance with Pacific Life. The Plan specifically states that benefits will be paid "only for services or supplies furnished to a person while the group policy is in force for that person." Id. at 251. Pacific Life did not have a continuing obligation to insure plaintiff merely because it denied his

---

[2]   In his reply, plaintiff claims that the physician's office cancelled the surgery because Pacific Life denied coverage. The administrative record does not support this assertion.

claim for benefits when coverage existed. Pacific Life's initial denial of his claim may been erroneous, but that does not mean the Court can order relief that would violate the express terms of the Plan. The Plan specifically excludes coverage for any medical treatment after insurance coverage terminated. The need for back surgery may have arisen in July 2001, but plaintiff did not have surgery while the policy was in force. Likewise, Pacific Life did not insure plaintiff after November 30, 2001, and it has no duty to pay for those services after coverage ended. Although the Court appreciates that plaintiff may have been reluctant to proceed with surgery when insurance coverage was doubtful, ERISA does not create a remedy for plaintiff's injury. Under the express terms of the Plan, Pacific Life's decision to deny plaintiff's request to pre-approve back surgery in 2004 and its refusal to pay physical therapy bills after November 30, 2001, was not arbitrary and capricious.

**IT IS THEREFORE ORDERED** that Pacific Life's decision to deny plaintiff's claim for pre-approval of back surgery and for physical therapy expenses after November 30, 2001, is **affirmed**. A separate judgment is entered herewith.

**DATED** this 25th day of October, 2006.

*Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT